IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINDSAY SNATCHKO, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. |
| FORT CHERRY SCHOOL DISTRICT and PAUL SROKA, | ) ) ) ) |
| Defendants. | ) ) ) ) **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Lindsay Snatchko, by and through her attorneys, Robb Leonard Mulvihill LLP and Thomas J. Farnan, Esquire, file the following Complaint:

## PARTIES

1.  The Plaintiff, Lindsay Snatchko, is an adult person who resides in Washington County, Pennsylvania.

2.  The Defendant, Fort Cherry School District, is a public school district located in 110 Fort Cherry Road, McDonald, Pennsylvania 15057.

3.  The Defendant, Paul Sroka, is an adult person who resides in Washington County, Pennsylvania and has been employed by the Fort Cherry School District as Business Manager.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction under 28 U.S.C. §1331 because the claims arise under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e to 2000e-17.

5. Venue is proper in this court under 28 U.S.C. § 1391 because the Plaintiff and the Defendants reside in the Western District of Pennsylvania and the events and omissions giving rise to the claim occurred here.

6. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

**FACTS**

7. Lindsay Snatchko filed a Complaint and a supplemental filing with the Equal Employment Opportunity Commission at EEOC Reference # 533-2013-01273 and received a Right to Sue letter in October 2015.

8. The following facts are repeated, sometimes verbatim, from those proceedings.

9. Paul Sroka interviewed and hired Lindsay Snatchko as Accounts Payable Secretary for the Fort Cherry School District.

10. During the interview, he made promises to her, including that she would receive "full tuition reimbursement" as part of her compensation package.

11. Paul Sroka was in a management/supervisory position over Lindsay Snatchko during her employment: He had authority to undertake or recommend tangible employment decisions affecting her and he had authority to direct her daily work activities.

12. Paul Sroka made sexual advances toward Lindsay Snatchko while she was working.

13. The sexual advances were meant to communicate a *quid pro quo*; *i.e.*, that if Lindsay Snatchko gave into the advance, that she would be treated favorably on the job.

14. The sexual advances had the effect of creating a hostile work environment, as they communicated to Lindsay Snatchko that she would be judged in her performance not on merit, but rather on her willingness to provide sexual favors to her boss.

15. The sexual advances are confirmed by text messages, emails and phone calls.

16. Lindsay Snatchko tried to maintain a relationship with Paul Sroka, her supervisor, throughout this process.

17. Lindsay Snatchko did not, however, ultimately succumb to Paul Sroka's sexual advances. As a result, she received unfavorable treatment on the job.

18. Lindsay Snatchko's failure to succumb to Paul Sroka's sexual advances created a hostile work environment – she was punished for not giving him the sexual attention that he wanted.

19. The hostile work environment continued throughout Lindsay Snatchko's employment, and included verbal insults; during her employment Paul Sroka called Lindsay Snatchko "cankles" and "jelly doughnut" and insulted her family. In fact, he made derogatory comments about the weight of women frequently.

20. When Lindsay Snatchko tried to defend herself against verbal abuse, Paul Sroka attempted to have her fired for insubordination.

21. On April 22, 2013, Ms. Snatchko filed a formal complaint with Dr. Robert Dinnen, the school district's superintendent.

22. Dr. Dinnen responded on April 24, 2013, conveying that he did not believe any harassment had occurred but offering Lindsay Snatchko the option to air her grievances during the May 28, 2013 School Board of Directors meeting, in executive session.

23. Dr. Dinnen warned Lindsay Snatchko to "think long and hard" about presenting her complaint to the school board.

24. Lindsay Snatchko appeared before the School Board to present her complaint; despite district policies requiring notice of a decision within 10 days, Lindsay Snatchko never received a response to her complaint from the School Board.

25. Instead, Dr. Dinnen responded, by supporting Paul Sroka and denying Lindsay Snatchko the tuition reimbursement that had been promised to her.

26. A subsequent attempt to address the issue with the School Board was surreptitiously and improperly denied.

27. Lindsay Snatchko had registered a series of complaints with Dr. Dinnen and told him that Paul Sroka's behavior was making it hard for her to continue working with the school district.

28. Even after all of these complaints, Paul Sroka continued to create a hostile work environment by harassing, bullying, and abusive behavior toward Lindsay Snatchko.

29. Paul Sroka has spread untrue and hurtful rumors about Lindsay Snatchko to other employees. He reported her and began to investigate her for phantom violations. He was critical of her, to other employees, for using FMLA leave.

30. Paul Sroka has engaged in other bizarre and harassing behavior toward Lindsay Snatchko, for instance: by shuffling out of order stacks of chronologically ordered paperwork and checks on her desk; by needlessly and relentlessly interrupting conversations she was having with other employees; and by invading her personal workspace in an intimidating manner.

31. On August 5, 2013, Lindsay Snatchko sent Paul Sroka an email requesting a raise based on the fact that she had recently received her bachelor's degree.

32. It is school district practice to grant salary increases when an employee receives a higher degree or certification than previously held.

33. The pay raise was not granted because of Lindsay Snatchko's failure to succumb to Paul Sroka's sexual advances and in retaliation for complaining about his harassment.

34. Lindsay Snatchko had similarly been denied a pay raise in the past.

35. To receive the bachelor's degree, Lindsay Snatchko had pursued courses at Kaplan University beginning on July 15, 2010.

36. The Fort Cherry School District was required to reimburse Lindsay Snatchko for her tuition.

37. While the Fort Cherry School District did reimburse for some of the tuition, it did not reimburse for all of it.

38. Lindsay Snatchko was treated differently than other employees because of her failure to succumb to Paul Sroka's sexual advances and in retaliation for asserting her legal rights to complain about it.

39. Lindsay Snatchko has filed a separate complaint for the failure to reimburse tuition while the EEOC matter was pending and the Court of Common Pleas of Washington County has denied the Fort Cherry School District's Motion for Summary Judgment at No. 2013-3155.

40. The Fort Cherry School District eventually terminated Lindsay Snatchko in retaliation for complaining about and seeking redress for the various violations of her legal rights outlined herein.

## COUNT I
## SNATCHKO v. FORT CHERRY SCHOOL DISTRICT
## SEXUAL HARASSMENT AND SEX DISCRIMINATION
## TITLE VII

41. The above paragraphs are incorporated as though fully set forth herein.

42. Title VII of the Civil Rights Act assures that women in the workplace are treated equally and fairly in employment decisions. 42 U.S.C. §§ 2000e to 2000e-17.

43. The statute, and the vast body of judicial decisions interpreting it, provide that women should not face sexual intimidation in the workplace; nor should they suffer adverse employment decisions for their failure to submit to sexual advances.

44. Lindsay Snatchko was led to believe that submitting to Paul Sroka's sexual advances were a *quid pro quo* to success and achievement in her workplace.

45. Lindsay Snatchko's failure to comply with Paul Sroka's sexual advances caused him to create a hostile work environment for her and led to a series of adverse employment decisions, outlined above.

46. A failed attempt at a relationship, itself, creates an inference that the harassment that came next was based on sexual status. *See, e.g., Green v. Administrators of the Tulane Educ. Fund*, 284 F.3d 642, 656 (5th Cir. 2002).

47. The Fort Cherry School District knew of the *quid pro quo* harassment and the hostile work environment and not only failed to correct it; the Fort Cherry School District actively participated by overseeing and authorizing the bad behavior.

48. The Fort Cherry School District is directly liable and is also vicariously liable under the doctrines of *respondeat superior* and under principles of agency.

WHEREFORE, Lindsay Snatchko hereby demands judgment against the Fort Cherry School District for all damages based on these allegations, including compensatory damages, punitive damages, attorneys' fees, and costs.

## COUNT II
## SNATCHKO v. FORT CHERRY SCHOOL DISTRICT
## RETALIATION
## TITLE VII

49. The above paragraphs are incorporated as though fully set forth herein.

50. Under Title VII, it illegal to fire, demote, harass, or otherwise "retaliate" against an employee because she filed a charge of discrimination, because she complained to her employer about discrimination on the job, or because she participated in an employment discrimination proceeding (such as an investigation or lawsuit).

51. When Lindsay Snatchko reported the sexual harassment, and brought her claims before the proper authorities, Paul Sroka and the Fort Cherry School District retaliated against her by further harassing conduct and by adverse employment decisions, outlined above.

52. To the extent such retaliation was conducted by Paul Sroka, the Fort Cherry School District is directly liable and is also vicariously liable under the doctrines of *respondeat superior* and under principles of agency.

53. WHEREFORE, Lindsay Snatchko hereby demands judgment against the Fort Cherry School District for all damages based on these allegations, including compensatory damages, punitive damages, attorneys' fees, and costs.

## COUNT III
## SNATCHKO v. FORT CHERRY SCHOOL DISTRICT
## SEXUAL HARASSMENT AND SEX DISCRIMINATION
## PHRA

1. The above paragraphs are incorporated as though fully set forth herein.

2. The Pennsylvania Human Relations Act prohibits sexual harassment in the workplace. 43 P.S. §§ 951-63.

3. The statute, and the vast body of judicial decisions interpreting it, provide that women should not face sexual intimidation in the workplace; nor should they suffer adverse employment decisions for their failure to submit to sexual advances.

4. Lindsay Snatchko was led to believe that submitting to Paul Sroka's sexual advances were a *quid pro quo* to success and achievement in her workplace.

5. Lindsay Snatchko's failure to comply with Paul Sroka's sexual advances caused him to create a hostile work environment for her and led to a series of adverse employment decisions, outlined above.

6. A failed attempt at a relationship, itself, creates an inference that the harassment that came next was based on sexual status. *See, e.g., Green v. Administrators of the Tulane Educ. Fund*, 284 F.3d 642, 656 (5th Cir. 2002).

7. The Fort Cherry School District knew of the *quid pro quo* harassment and the hostile work environment and not only failed to correct it; the Fort Cherry School District actively participated by overseeing and authorizing the bad behavior.

8. The Fort Cherry School District is directly liable and is also vicariously liable under the doctrines of *respondeat superior* and under principles of agency.

WHEREFORE, Lindsay Snatchko hereby demands judgment against the Fort Cherry School District for all damages based on these allegations, including compensatory damages, punitive damages, attorneys' fees, and costs.

## COUNT IV
## SNATCHKO v. FORT CHERRY SCHOOL DISTRICT
## RETALIATION
## PHRA

9. The above paragraphs are incorporated as though fully set forth herein.

10. Under the PHRA, it illegal to fire, demote, harass, or otherwise "retaliate" against an employee because she filed a charge of discrimination, because she complained to her employer about discrimination on the job, or because she participated in an employment discrimination proceeding (such as an investigation or lawsuit).

11. When Lindsay Snatchko reported that she was being harassed, and brought her claims before the proper authorities, Paul Sroka and the Fort Cherry School District retaliated against her by further harassing conduct and by adverse employment decisions, outlined above.

12. To the extent such retaliation was conducted by Paul Sroka, the Fort Cherry School District is directly liable and is also vicariously liable under the doctrines of *respondeat superior* and under principles of agency.

WHEREFORE, Lindsay Snatchko hereby demands judgment against the Fort Cherry School District for all damages based on these allegations, including compensatory damages, punitive damages, attorneys' fees, and costs.

## COUNT V
## SNATCHKO v. PAUL SROKA
## SEXUAL HARASSMENT AND SEX DISCRIMINATION
## TITLE VII

13. The above paragraphs are incorporated as though fully set forth herein.

14. Title VII of the Civil Rights Act assures that women in the workplace are treated equally and fairly in employment decisions. 42 U.S.C. §§ 2000e to 2000e-17.

15. The statute, and the vast body of judicial decisions interpreting it, provide that women should not face sexual intimidation in the workplace; nor should they suffer adverse employment decisions for their failure to submit to sexual advances.

16. Lindsay Snatchko was led to believe that submitting to Paul Sroka's sexual advances were a *quid pro quo* to success and achievement in her workplace.

17. Lindsay Snatchko's failure to comply with Paul Sroka's sexual advances caused him to create a hostile work environment for her and led to a series of adverse employment decisions, outlined above.

18. A failed attempt at a relationship, itself, creates an inference that the harassment that came next was based on sexual status. *See, e.g., Green v. Administrators of the Tulane Educ. Fund*, 284 F.3d 642, 656 (5th Cir. 2002).

WHEREFORE, Lindsay Snatchko hereby demands judgment against Paul Sroka for all damages based on these allegations, including compensatory damages, punitive damages, attorneys' fees, and costs.

## COUNT VI
## SNATCHKO v. PAUL SROKA
## RETALIATION
## TITLE VII

19. The above paragraphs are incorporated as though fully set forth herein.

20. Under Title VII, it illegal to fire, demote, harass, or otherwise "retaliate" against an employee because she filed a charge of discrimination, because she complained to her employer about discrimination on the job, or because she participated in an employment discrimination proceeding (such as an investigation or lawsuit).

21. When Lindsay Snatchko reported the sexual harassment, and brought her claims before the proper authorities, Paul Sroka and the Fort Cherry School District retaliated against her by further harassing conduct and by adverse employment decisions, outlined above.

WHEREFORE, Lindsay Snatchko hereby demands judgment against Paul Sroka for all damages based on these allegations, including compensatory damages, punitive damages, attorneys' fees, and costs.

## COUNT VII
## SNATCHKO v. PAUL SROKA
## SEXUAL HARASSMENT AND SEX DISCRIMINATION
## PHRA

22. The above paragraphs are incorporated as though fully set forth herein.

23. The Pennsylvania Human Relations Act prohibits sexual harassment in the workplace. 43 P.S. §§ 951-63.

24. The statute, and the vast body of judicial decisions interpreting it, provide that women should not face sexual intimidation in the workplace; nor should they suffer adverse employment decisions for their failure to submit to sexual advances.

25. Lindsay Snatchko was led to believe that submitting to Paul Sroka's sexual advances were a *quid pro quo* to success and achievement in her workplace.

26. Lindsay Snatchko's failure to comply with Paul Sroka's sexual advances caused him to create a hostile work environment for her and led to a series of adverse employment decisions, outlined above.

27. A failed attempt at a relationship, itself, creates an inference that the harassment that came next was based on sexual status. *See, e.g., Green v. Administrators of the Tulane Educ. Fund*, 284 F.3d 642, 656 (5th Cir. 2002).

WHEREFORE, Lindsay Snatchko hereby demands judgment against Paul Sroka for all damages based on these allegations, including compensatory damages, punitive damages, attorneys' fees, and costs.

## COUNT VIII
## SNATCHKO v. PAUL SROKA
## RETALIATION
## PHRA

28. The above paragraphs are incorporated as though fully set forth herein.

29. Under the PHRA, it illegal to fire, demote, harass, or otherwise "retaliate" against an employee because she filed a charge of discrimination, because she complained to her employer about discrimination on the job, or because she participated in an employment discrimination proceeding (such as an investigation or lawsuit).

30. When Lindsay Snatchko reported that she was being harassed, and brought her claims before the proper authorities, Paul Sroka and the Fort Cherry School District retaliated against her by further harassing conduct and by adverse employment decisions, outlined above.

WHEREFORE, Lindsay Snatchko hereby demands judgment against Paul Sroka for all damages based on these allegations, including compensatory damages, punitive damages, attorneys' fees, and costs.

Respectfully submitted,

Dated: December 28, 2015    By:    /s/*Thomas J. Farnan*
Thomas J. Farnan, Esquire
PA Id. #53462
Robb Leonard Mulvihill LLP
BNY Mellon Center
500 Grant Street, 23rd Floor
Pittsburgh, PA  15219
Telephone:   (412) 281-5431
Facsimile:    (412) 281-3711
Email:         tfarnan@rlmlawfirm.com
*Counsel for Plaintiff*